UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ANNIE BERMAN and EDWARD BERMAN,

                Plaintiffs,

     -against-

JANNEY MONTGOMERY SCOTT LLC and
MORGAN KEEGAN & CO. INC.,

                Defendants.

----------------------------------------------------------x

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT MORGAN KEEGAN & CO., INC.'S MOTION TO DISMISS**

Civil Action No. 10 CIV 5866 (PKC)


SNOW BECKER KRAUSS P.C.
Ronald S. Herzog (RH-4932)
605 Third Avenue
25th Floor
New York, New York 10158
(212) 687-3860

- and -

PARKER, HUDSON, RAINER & DOBBS LLP
G. Wayne Hillis, Jr.
Scott E. Zweigel
*Admitted Pro Hac Vice*
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30330
(404) 523-5300

*Attorneys for Defendant Morgan Keegan & Co., Inc.*

# TABLE OF CONTENTS

I. Introduction ........................................................................................................................1

II. Plaintiffs' Claims Are Barred by the Applicable Statutes of Limitations ..........................1

   1. Each claim is incidental to the alleged conversion and thus governed by a
three-year statute of limitations. ...................................................................................2

   2. Plaintiffs' attempts to make their conversion claim timely fail... ................................2

   3. Plaintiffs' claims are barred even under the statute of limitations applicable to fraud. ........3

III. Plaintiffs Fail to State a Claim Against Morgan Keegan ...................................................5

   1. The loan agreements expressly and unambiguously authorized the sale of the notes,
and Plaintiffs' notes were sold by Janney Montgomery Scott. .....................................5

   2. The website printout from 2000 and the indemnity agreement do not establish Morgan
Keegan's actual knowledge of wrongful conduct by Bancroft. ....................................7

   3. The Patriot Act and industry rules cannot salvage Plaintiffs' claims. .........................8

IV. Plaintiffs Should Not Be Given Leave to Amend ...............................................................9

V. Conclusion. .......................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Aiken v. Interglobal Mergers and Acquisitions*, 2006 WL 1878323 (S.D.N.Y. July 5, 2006)........8

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).................................................................................5, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)..............................................5

*Brady v. Calyon Sec. (USA) Inc.*, 406 F. Supp. 2d 307 (S.D.N.Y. 2005) ....................................8

*Cooper v. Parsky*, 140 F.3d 433 (2d Cir. 1998). .........................................................................9

*Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224 (S.D.N.Y. 1995) .....................................................4

*Glonti v. Stevenson*, 2009 WL 311293 (S.D.N.Y. Feb. 6, 2009) .................................................8

*GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.*,
   580 F. Supp. 2d (S.D.N.Y. 2008) ............................................................................................4

*Johnson v. Gumer*, 94 A.D.2d 955, 464 N.Y.S.2d 318 (4th Dep't 1983)....................................3

*Kolbeck v. LIT Am.*, 939 F. Supp. 240 (S.D.N.Y. 1996). ............................................................8

*Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447 (S.D.N.Y. 2009)......................................2, 4

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387 (S.D.N.Y. 2010) ...........2

*Marshall v. Milberg LLP*, 2009 WL 5177975 (S.D.N.Y. Dec. 23, 2009)....................................4

*Medical Supply Chain, Inc. v. U.S. Bancorp, NA*, 2003 WL 21479192 (D. Kan. June 16, 2003),
   *aff'd.*, 112 Fed. Appx. 730 (10th Cir. 2004) .........................................................................8

*Mirman v. Berk & Michaels, P.C.*, 1992 WL 332238 (S.D.N.Y. Oct. 30, 1992)...........................4

*People of New York v. Morton Atwater*, 229 N.Y. 303, 128 N.E. 196 (1920). ............................1

*Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456 (C.D. Cal. June 30, 2010).......................9

*Two Clinton Square Corp. v. Friedler*, 91 A.D.2d 1193, 459 N.Y.S.2d 179 (4th Dep't 1983)......3

*Vigilant Ins. Co. of America v. Housing Authority of El Paso.*, 87 N.Y.2d 36, 637 N.Y.S.2d 342
   (1995)......................................................................................................................................2

**Statutes**

New York CPLR 206(a)(1) ...................................................................................................3

New York CPLR 214 (4)......................................................................................................9

## I. Introduction

Plaintiffs' claims against Morgan Keegan, the only remaining defendant from the five named in Plaintiffs' summons with notice, should be dismissed pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs' Complaint and Opposition both confirm that their claims -- all based on the alleged conversion of their floating rate notes in October 2003 -- are time-barred under any of the applicable statute of limitations. Furthermore, Plaintiffs have failed to plead sufficient facts to state a plausible claim for relief. Plaintiff's Opposition largely repeats the same conclusions and speculative allegations in their Complaint and, like the Complaint, is devoid of actual facts. Finally, despite representing to the Court that they "elect[ed] to stand on the existing pleading rather than amend," (Doc. No. 38) Plaintiffs now announce their intention to seek leave to amend to assert yet another untimely and even more baseless claim that one court has already rejected as a matter of law. Plaintiffs' motion for leave to amend should be denied and their claims dismissed with prejudice.

## II. Plaintiffs' Claims Are Barred by the Applicable Statutes of Limitations

Plaintiffs' claims clearly are time-barred. In one of the few accurate statements in their Opposition, Plaintiffs acknowledge that "[t]he sale of securities without authority constitutes a conversion." (Opposition at 18 (citing *People of New York v. Morton Atwater*, 229 N.Y. 303, 128 N.E. 196 (1920)). Plaintiffs' own allegations establish that the alleged wrongful conduct underpinning each of their claims -- Bancroft's conversion of Plaintiffs' notes -- occurred in October 2003. Since each of Plaintiffs' claims is incidental to the alleged conversion, they are all untimely. However, even if the statute of limitations for fraud-based claims were somehow applicable, Plaintiffs' claims still are untimely as this action was not brought within either six years of the

1

alleged misconduct or two years after Plaintiffs admittedly were on inquiry notice.[1] *See Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009). Thus, Plaintiffs' claims should be dismissed as time-barred.

> 1. *Each claim is incidental to the alleged conversion and thus governed by a three-year statute of limitations.*

Each of Plaintiffs' claims is directly premised on the alleged conversion *in October 2003* of several floating rates notes they allegedly pledged to Bancroft as collateral. (*See, e.g.*, Opposition at 3, 5, 9, and 22 (discussing sale of Plaintiffs' collateral and basing claims on conversion).) Because the aiding and abetting breach of fiduciary duty and fraud claims (and putative breach of fiduciary duty claim) are merely incidental to the conversion claim, they all are barred by the three-year statute of limitations for conversion. (*See* Doc. No. 13 at pp. 7-9.)

Plaintiffs attempt to distinguish *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 394 (S.D.N.Y. 2010), by arguing that they assert separate fraud and conversion claims. (Opposition at 18-20) Their own allegations, however, make clear that the unauthorized sale of the notes is the gravamen of all of their claims, regardless of the label Plaintiffs seek to attach. Plaintiffs also rely on a convoluted damages argument, which appears nowhere in the Complaint (Opposition at 20-21) and which is conclusively refuted by the Complaint, which seeks identical damages for each of their three claims. (*See* Compl. ¶¶ 133, 139, 143.)

> 2. *Plaintiffs' attempts to make their conversion claim timely fail.*

Plaintiffs' argument that the statute of limitations for their conversion claim did not accrue until they demanded the return of the notes after filing their Complaint contradicts their other allegations and the very case law they cite. (*See* Opposition at 21-22.) If, as Plaintiffs admit,

---

[1] Although Plaintiffs admit being on inquiry notice in 2007, (Compl. ¶¶ 3, 25), they actually were on such notice in 2005, five years before bringing this action, when they apparently stopped receiving quarterly account statements from Bancroft and ceased making payments to Bancroft after it filed for bankruptcy. (*Id.*, ¶ 24.)

Bancroft's original possession of the notes was lawful, then under the authorities they cite (*Id.*, at 22), the sale constituted the conversion, making a demand by Plaintiffs unnecessary.[2] Accordingly, the statute of limitations for conversion accrued when the notes were sold allegedly without authority in 2003, not when Plaintiffs filed their Complaint some seven years later.

Plaintiffs' discovery rule argument also contradicts New York law. For a conversion-based claim, "accrual runs from the date the conversion takes place and not from discovery or the exercise of diligence to discover[.]" *Vigilant Ins. Co. of America v. Housing Authority of El Paso.*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 347(1995) (citations omitted); *see also Two Clinton Square Corp. v. Friedler*, 91 A.D.2d 1193, 1194, 459 N.Y.S.2d 179, 181 (4th Dep't 1983) ("Even though the plaintiff may have been unaware of the conversion, the cause of action accrues and the statutory period begins to run when the conversion occurs.") Indeed, the very case Plaintiffs cite states that "[t]he Statute of Limitations applicable to conversion actions begins to run from the date the conversion occurs." *Johnson v. Gumer*, 94 A.D.2d 955, 464 N.Y.S.2d 318, 319 (4th Dep't 1983).

Plaintiffs' reliance on C.P.L.R. § 206(a)(1) is misplaced for two reasons. First, this statute only applies "***where a demand is necessary*** to entitle a person to commence an action." (emphasis added). Demand here was not necessary, as Plaintiffs admit that the alleged conversion occurred when the notes were sold in October 2003. (Opposition at 22.) Second, Plaintiffs' conversion claim does not stem from Bancroft's "retention of their securities as their agent" (*Id.*), but rather, it is based solely on Bancroft's allegedly unauthorized sale of the notes in 2003. *See Id.* at 18 ("sale of securities without authority constitutes a conversion.")

3. *Plaintiffs' claims are barred even under the statute of limitations applicable to fraud.*
Even under the statute of limitations for fraud, Plaintiffs' claims are time-barred, as Plaintiffs

---

[2] If Bancroft's possession of the notes was lawful, and if the notes had not been sold, under the Master Loan Financing and Security Agreements Plaintiffs had no right to demand return of the notes unless and until they repaid the loan, which they have not alleged to have done.

3

filed this action more than six years after the alleged misconduct and more than two years after they were on inquiry notice, if not actual notice, of their claims. (*See* Compl. ¶¶ 3, 25.) Specifically, the alleged wrongdoing occurred in 2003, and Plaintiffs were on inquiry notice of their claims not later than July 2007. (*Id.* at ¶ 3.) Thus, this action, filed in 2010, clearly is time-barred.

In a desperate attempt to avoid this clear time-bar, Plaintiffs argue -- without a single citation to authority -- that their aiding and abetting claims against Morgan Keegan did not accrue until they were on inquiry notice of Morgan Keegan's specific role.[3] Plaintiffs' argument is flat wrong. *See Kottler v. Deutsche Bank AG, supra,* 607 F. Supp. at 460 ("Once plaintiff has notice of the fraud, '[he] is charged with whatever knowledge an inquiry would have revealed.'" (quoting *Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1231 (S.D.N.Y. 1995)); *GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., supra,* 580 F. Supp. 2d at 327-328; *see also Marshall v. Milberg LLP,* 2009 WL 5177975 *6-7 (S.D.N.Y. Dec. 23, 2009) (knowledge of specific parties involved are "mere details" for inquiry notice purposes.)

As a matter of law, Plaintiffs were on inquiry notice of their potential claims relating to Bancroft's alleged fraud (including the aiding and abetting claims belatedly asserted against Morgan Keegan) no later than July 2007 when they received the IRS notice. *See Mirman v. Berk & Michaels, P.C.,* 1992 WL 332238 *2 (S.D.N.Y. Oct. 30, 1992) (holding that an "IRS investigation provided at least constructive notice of possible wrongdoing."). Plaintiffs knowingly transferred their notes to Bancroft's account at Morgan Keegan and even claim to have communicated with

---

[3] Whether Plaintiffs had actual knowledge that Bancroft used a Morgan Keegan account for the receipt of the notes -- which they undeniably did (*see* Compl. ¶ 79) -- is immaterial, inasmuch as the critical date is when Plaintiffs were deemed to be on inquiry notice of the underlying misconduct for which they assert aiding and abetting claims. *See GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.,* 580 F. Supp. 2d 321, 327-328 (S.D.N.Y. 2008) (stating that a plaintiff "need not be on notice of the entire fraud to trigger the duty of inquiry.") To hold otherwise would encourage serial litigation where plaintiffs could bring aiding and abetting claims indefinitely simply by arguing that they were unaware of the aider and abettor or its exact involvement in the contested transaction until many years after the underlying statute of limitations expired.

4

Morgan Keegan to arrange the transfer. (Compl. ¶¶ 22, 23, 79.) Plaintiffs also knew, based on the IRS letter they received, that their notes were sold within a few days of this transfer. (*Id.* ¶ 27.) Even if notice of Morgan Keegan's alleged involvement in the sale of the notes was needed to trigger the statute of limitations, Plaintiffs' alleged communication with Morgan Keegan, coupled with their admission that the IRS letter put them on inquiry notice of Bancroft's alleged fraud, was more than sufficient to put Plaintiffs on notice of a potential claim against Morgan Keegan in July 2007.

### III.  Plaintiffs Fail to State a Claim Against Morgan Keegan

To avoid dismissal, Plaintiffs must allege facts that plausibly suggest that Morgan Keegan could be liable under a viable theory. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") Here, Plaintiffs have levied nothing but conclusions and unsupported speculation. Indeed, the most plausible explanation of the few actual facts Plaintiffs allege is that Morgan Keegan acted lawfully and merely followed the express instructions of its customer, Bancroft.

   *1.  The loan agreements expressly and unambiguously authorized the sale of the notes, and plaintiffs' notes were sold by Janney Montgomery Scott.*

Two incontrovertible facts require dismissal of all claims against Morgan Keegan. *First*, in their loan agreements with Bancroft, Plaintiffs unequivocally authorized Bancroft to sell the notes. (Compl. ¶ 37; Doc. No. 13 at pp. 14-16; Doc. No. 41-1 at p. 2.) Yet, Plaintiffs argue that the sale was unauthorized because the notes were sold too soon - before the commencement of the loan term - and that this sale "prior to their loans being funded . . . constituted the fraud, breach of fiduciary duty, and conversion by Derivium." (Opposition at 8.) This argument, however, directly contradicts Plaintiffs' allegations that Bancroft represented that it would hold and hedge the collateral **without**

5

**selling it**. (Compl. ¶¶ 16-17.) Any fair reading of the Complaint reveals that Plaintiffs' claims are based on the fact that the notes were sold, not that they were sold too early. Since Plaintiffs expressly authorized the sale, their claims fail.

Regardless, Plaintiffs fail to allege facts showing that Morgan Keegan had any knowledge that the sale violated the terms of Plaintiffs' written agreements with Bancroft. (*See* Doc. No. 13 at p. 14 n. 11.) Plaintiffs merely repeat the same conclusory allegations that Morgan Keegan knew that the loan agreement only allowed the collateral to be sold during the loan term. (Opposition at 9; Compl. ¶ 38.) But Plaintiffs do not allege that anyone at Morgan Keegan ever saw Plaintiffs' written agreements with Bancroft or otherwise knew the precise terms of those agreements. Plaintiffs fail to explain how Morgan Keegan could possibly know that Bancroft's sale of notes violated the terms of an agreement with a third party that Morgan Keegan is not alleged to have seen.

*Second*, Plaintiffs attribute no conduct to Morgan Keegan inconsistent with their claimed right to beneficial ownership of the notes. (Doc. No. 13 at 5-6.) Plaintiffs simply allege that Morgan Keegan accepted delivery of the notes into Bancroft's account (presumably in the ordinary course) and shortly thereafter transferred the notes to an account Bancroft maintained at another brokerage firm (recently dismissed defendant JMS) where they were sold. (Compl. ¶¶ 59, 73, 79, 84, 89, 119.) Nothing Morgan Keegan is alleged to have done is in any way inconsistent with Bancroft holding the notes for the life of the loans, as Plaintiffs claim it should have done, or with Plaintiffs maintaining a beneficial interest in the notes.

Thus, there is no allegation of fact that would plausibly suggest that Morgan Keegan had actual knowledge of or should have known of Bancroft's alleged tortious conduct. Based on the absence of these essential facts, which is even more telling since through Derivium's bankruptcy Plaintiffs' counsel had available to him thousands of pages of Morgan Keegan's documents when the Complaint was drafted, Plaintiffs do not allege the knowing conduct or substantial assistance by

Morgan Keegan which is necessary for all three of their claims. Accordingly, even if not time-barred, Plaintiffs' claims -- all of which are premised on the fact that Bancroft sold their notes -- fail.

    2.    *The website printout from 2000 and the indemnity agreement do not establish Morgan Keegan's actual knowledge of wrongful conduct by Bancroft.*

Plaintiffs' argument that a website printout for Derivium (not Bancroft, with whom Plaintiffs dealt), dated three years prior to Plaintiffs' transactions with Bancroft somehow put Morgan Keegan on actual notice of Bancroft's wrongdoing is a leap of monumental proportions. The printout does not reference Bancroft, Plaintiffs or their transactions, and Plaintiffs do not even allege that they ever saw the printout. Further, the printout does not state, as Plaintiffs allege, that the collateral would not be sold by Derivium, but merely states that the Derivium customer does not have to sell the collateral. Indeed, the Master Loan Agreements Plaintiffs executed expressly state that Bancroft could sell the pledged securities.[4]

Plaintiffs make another vast leap with their far-fetched argument related to an alleged indemnity agreement between Bancroft, JMS and Morgan Keegan. (Opposition at 9.) The inferences Plaintiffs strain to draw from that agreement - that Morgan Keegan somehow knew about Bancroft's alleged wrongdoing and was concerned about its own liability - are simply not based on any facts. That alleged agreement does not mention Plaintiffs or any other Bancroft customer, nor does it reference transactions by Bancroft for the benefit of any of its customers. By its terms, it does not purport to indemnify Morgan Keegan or JMS with respect to Bancroft's dealings with its customers. It simply relieves JMS and Morgan Keegan from best execution duties to Bancroft

---

[4] Further, the alleged representation that the collateral would be hedged makes sense only if the collateral was to be sold. If Bancroft retained the collateral for the entire 28-year loan term, then there was nothing to hedge. If at the end of the loan term the collateral was worth less than the outstanding loan plus accrued interest, then Plaintiffs would walk away from the nonrecourse loan and Bancroft would retain the collateral. If, on the other hand, the collateral exceeded the outstanding loan balance, then Plaintiffs would repay the loan plus accrued interest and obtain the return of the collateral. Clearly, the only hedging necessary would be to protect Bancroft's ability to return previously sold collateral at the end of the loan term.

relating to *its* securities transactions. Plaintiffs' unsupported, illogical, and speculative inferences do not state a plausible claim and do not defeat Morgan Keegan's motion.

   3.  *The Patriot Act and industry rules cannot salvage Plaintiffs' claims.*

Finally, Plaintiffs' arguments based on the U.S. Patriot Act and securities industry rules do not supply the facts necessary to support the claims against Morgan Keegan. Actual knowledge -- not constructive knowledge based on what allegedly should have been suspected -- is required to establish aiding and abetting liability. *See, e.g., Kolbeck v. LIT Am.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996). In *Glonti v. Stevenson*, 2009 WL 311293 *8 (S.D.N.Y. Feb. 6, 2009), Judge McMahon analyzed Plaintiffs' precise argument and found that information concerning what a financial institution should know about a customer only established constructive knowledge, at most, which was insufficient to sustain an aiding and abetting cause of action. *Id.* at * 23.

Here, Plaintiffs' speculation regarding what Morgan Keegan should have known about Derivium and Bancroft does not establish plausible facts suggesting that Morgan Keegan was an aider or abettor with actual knowledge. Plaintiffs' mere vague, speculative conclusions, which are unsupported and not plead with particularity, are not sufficient to defeat Morgan Keegan's motion to dismiss. *See Iqbal*, 129 S. Ct. at 1949.[5] Because the Complaint is devoid of *facts* establishing Morgan Keegan's actual knowledge, each of Plaintiffs' claims for aiding and abetting liability fails.

## IV. Plaintiffs Should Not Be Given Leave to Amend

Plaintiffs' belatedly announced intention to seek leave to amend to add an attenuated and time-barred claim against Morgan Keegan for breach of fiduciary duty is baseless and should be

---

[5] Furthermore, neither the Patriot Act nor industry rules afford a private cause of action to Morgan Keegan customers, much less to those, like Plaintiffs, who had no customer relationship with Morgan Keegan. *See Aiken v. Interglobal Mergers and Acquisitions*, 2006 WL 1878323 *2 (S.D.N.Y. July 5, 2006) ("neither the Bank Secrecy Act nor the Patriot Act affords a private right of action."); *Brady v. Calyon Sec. (USA) Inc.*, 406 F. Supp. 2d 307, 312 & n.1 (S.D.N.Y. 2005) (no private right of action based on industry rules); *Medical Supply Chain, Inc. v. U.S. Bancorp, NA*, 2003 WL 21479192 *7 (D. Kan. June 16, 2003), *aff'd.*, 112 Fed. Appx. 730 (10th Cir. 2004) ("no private right of action exists to enforce the Patriot Act.").

denied. Granting Plaintiffs leave to amend would be futile, as any such claim is time-barred. A claim seeking monetary damages for a breach of fiduciary duty -- as the proposed claim presumably would -- must be brought within three years of the act complained of. *See Cooper v. Parsky*, 140 F.3d 433, 440-41 (2d Cir. 1998); N.Y. C.P.L.R. § 214(4). Because the alleged breach of fiduciary duty occurred in October 2003, when the collateral was sold, the limitations period within which Plaintiffs were required to bring a direct claim for breach of fiduciary duty has long since expired.

Moreover, the proposed claim against Morgan Keegan for breach of fiduciary duty does not pass muster. It is undisputed that Plaintiffs never maintained an account with Morgan Keegan and never appointed Morgan Keegan as their agent. Further, Plaintiffs' far-fetched sub-agency argument (*see* Opposition at 24-25) was expressly rejected in the *Sollberger* case. Plaintiffs' counsel asserted the identical sub-agency claim against Morgan Keegan (and others) and the Central District of California Court squarely held that it could not survive F.R.C.P. 12(b)(6) scrutiny. *See Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456 *5 (C.D. Cal. June 30, 2010) ("Plaintiff's allegations do not establish that Defendants were his agents or subagents."). In analyzing various claims based on the same sub-agency argument, the Court held that: "Plaintiff, in making his subagency argument, cites mostly conclusory allegations. The minimal facts alleged against Defendants do not, as Plaintiff argues, 'lead to the inference that [Defendants] were' Plaintiff's subagents. Thus, Plaintiff's subagency theory fails." *Id.* at * 6.[6] As in *Sollberger*, Plaintiffs' legal conclusion-laden, unsupported allegations regarding a sub-agency relationship fail to establish the plausible facts necessary to state a claim.

---

[6] Although Morgan Keegan discussed the *Sollberger* decision in its main Memorandum of Law, Plaintiffs failed to respond to those arguments. The *Sollberger* decision and the procedural history of that case -- with plaintiff filing a complaint, first amended complaint, and second amended complaint without stating a claim -- demonstrate that the Bermans will not be able to state a claim upon which relief can be granted even if granted leave to amend.

9

In addition, Plaintiffs' purported breach of fiduciary duty claim fails because documentary evidence establishes that Bancroft was not Plaintiffs' agent, which would be necessary to support a claim of sub-agency liability against Morgan Keegan. The loan agreements signed by Plaintiffs disclaim an agency relationship in clear and unambiguous terms. (*See* Master Loan Agreement, Doc. No. 41-2, at 2 (stating that Bancroft "does not incur any other obligations to [Plaintiffs] hereunder and is not otherwise acting as [Plaintiffs'] agent in connection with any Application or Loan."); *see also* Loan Agreement Rider, Doc. No. 41-1 at 9-10 (stating that Plaintiffs "acknowledge[] that [Bancroft] is not acting as [Plaintiffs'] agent in connection with any loan.")) Because no agency relationship with Bancroft was created under the loan agreements, Plaintiffs can not allege any facts to support a breach of fiduciary duty claim against Morgan Keegan based on a sub-agency theory.

Finally, the Court provided Plaintiffs the opportunity to amend their Complaint at the October 8, 2010 pretrial conference, yet "[h]aving received defendants' motion papers, plaintiff elect[ed] to stand on the existing pleading rather than amend." (Doc. No. 38 at 1.) Plaintiffs' counsel announced confidently at that conference that they had no need to amend, had no additional facts to plead, and would stand on their Complaint. After dismissing JMS, Plaintiffs now throw up a "Hail Mary" sub-agency claim, which one court has already rejected, in a desperate attempt to avoid dismissal. Plaintiffs should not be allowed to back-peddle simply because they now recognize the infirmity of their original claims.

## V. Conclusion

For these reasons, as well as the reasons set forth in the original brief in support of its Motion to Dismiss, the Court should dismiss with prejudice all claims that Plaintiffs assert in this lawsuit against Morgan Keegan and deny Plaintiffs' application for leave to replead.

Dated: New York, New York  
        November 19, 2010

Respectfully submitted,

PARKER, HUDSON, RAINER & DOBBS LLP  
G. Wayne Hillis, Jr.  
Scott E. Zweigel  
*Admitted Pro Hac Vice*  
1500 Marquis Two Tower  
285 Peachtree Center Avenue, NE  
Atlanta, GA 30330  
(404) 523-5300  

SNOW BECKER KRAUSS P.C.

By: /s/ Ronald S. Herzog  
Ronald S. Herzog (RH-4932)  
605 Third Avenue  
25th Floor  
New York, New York 10158  
(212) 687-3860

*Attorneys for Defendant Morgan Keegan & Co., Inc.*