UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

ANNIE BERMAN and EDWARD BERMAN,

    Plaintiffs,

    v.

JANNEY MONTGOMERY SCOTT, LLC and
MORGAN KEEGAN & COMPANY, INC.

    Defendants.

------------------------------------------------------x

Case No. 10-cv-5866 (PKC)

[ECF CASE]

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ALTER OR AMEND THE JUDGMENT AND FOR LEAVE TO AMEND THE COMPLAINT**

## TABLE OF CONTENTS

I. INTRODUCTION
II. STANDARDS OF REVIEW
III. ARGUMENT
    a. The Complaint Alleges Well-Pled Facts of Morgan Keegan and Gooch's Knowledge of Derivium's Fraud.
    b. Plaintiffs Can Plead Knowledge through the Conscious Avoidance Standard
    c. The Court Erred In Denying Plaintiffs Leave to Amend the Complaint
IV. CONCLUSION

## TABLE OF AUTHORITIES

### Cases

*Burnam v Amoco Container Co.*, 738 F2d 1230, 34 CCH EPD P 34576, 39 FR Serv 2d 1259 (1984, CA11 Ga) ................................................................................................................. 3
*Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) ................................ 3
*DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003) ............ 3
*M&T Mortg. Corp. v. Miller*, 323 F. Supp. 2d 405, 412 (E.D.N.Y. 2004) .................................. 3
*Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) ................................................ 3
United States v Municipal Auth., 181 FRD 290 (1996, MD Pa) ................................................ 2

### Statutes

F.R.C.P. 15(a) ........................................................................................................................ 2, 3
F.R.C.P. 59(e) ........................................................................................................................ 1, 2

Plaintiffs Annie Berman and Edward Berman, through their attorneys of record, bring the following motion pursuant to Fed. Rule of Civ. Proc., Rule 59(e) and Rule 15(a) and respectfully requet that this Court reconsider, alter and amend the Court's Judgment (Dkt. 50), entered March 18, 2011, and the Court's underlying Memorandum and Order (Dkt. 51), entered March 14, 2011), which granted Defendant Morgan Keegan's motion to dismiss without leave to amend; and that this Court grant Plaintiffs leave to file an amended complaint in the form attached as Exhibit XXX to the Declaration of Brian G. Isaacson, filed concurrently herewith.

## I. INTRODUCTION

In its Memorandum and Order (Dkt. 50) (hereinafter "Order"), which was the basis for the Court's Judgment (Dkt. 51), the Court dismissed all of Plaintiffs' claims against Defendant Morgan Keegan alleged in the Complaint without leave to amend, including aiding and abetting fraud, aiding and abetting breach of fiduciary duty and aiding and abetting conversion on grounds that Plaintiffs failed to allege these claims with sufficient particularity. Order, pp. 1-2 and 19-28. The Court denied Plaintiffs leave to amend. Order, pp. 28-29.

The Court found that Plaintiffs had pled the underlying fraud on the part of Bancroft and Derivium with the requisite particularity. Order, p. 17. However, the Court dismissed Plaintiffs claim against Morgan Keegan for aiding and abetting fraud on grounds that "plaintiffs' allegations that Morgan Keegan had knowledge of Derivium's fraudulent conduct are based upon conjecture and surmise." Order, p. 19. The Court further found that "[c]ollectively, the facts alleged do not give rise to a strong inference that Morgan Keegan had actual knowledge that Derivium or Bancroft was committing fraud. Order, p. 23.

Plaintiffs believe the Court erred in dismissing all claims against Morgan Keegan and in denying Plaintiffs leave to amend the Complaint.

## II.  **STANDARDS OF REVIEW**

Plaintiffs bring the present post-judgment motion to alter or amend a judgment and for leave to file a proposed amended complaint, pursuant to Fed. Rules of Civil Procedure, Rule 59(e) and Rule 15(a).

The purpose of a motion under F.R.C.P. 59(e) is to correct manifest errors of law or fact or present newly discovered evidence. *United States v Municipal Auth.*, 181 FRD 290 (1996, MD Pa). A District Court has power under Rule 59 *sua sponte* to consider altering or amending its judgment that would otherwise be final. *Burnam v Amoco Container Co.*, 738 F2d 1230, 34 CCH EPD P 34576, 39 FR Serv 2d 1259 (1984, CA11 Ga).

A motion for reconsideration may be granted if the movant "demonstrate[s] controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (considering motion under Rule 59(e)); accord *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003) (considering motion under Rule 60(a)).

In deciding a motion to dismiss under F.R.C.P. Rule 12(b)(6), the court must accept all of plaintiffs' allegations as true and dismiss the complaint only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

Fed. Rule of Civ. Pro., Rule 15(a) states that leave to amend "shall be freely given when justice so requires." *M&T Mortg. Corp. v. Miller*, 323 F. Supp. 2d 405, 412 (E.D.N.Y. 2004)

## III. ARGUMENT

### 1. The Complaint Alleges Well-Pled Facts of Morgan Keegan and Gooch's Knowledge of Derivium's Fraud.

The Complaint alleges that Derivium misrepresented the 90% Loan program in its marketing materials. Complaint ("Cmplt.") ¶¶16-20. The Complaint further alleges, in no uncertain terms, that Morgan Keegan knew of these marketing materials because Morgan Keegan produced a printed copy of Derivium's website to the Derivium Bankruptcy Trustee out of Robert Gooch's file on Derivium at Morgan Keegan. Cmplt. ¶¶30-32. In opposition to Morgan Keegan's motion to dismiss Plaintiffs attached a copy of this same printout of Derivium's website, dated 08/30/200, as Exhibit 5 to the Declaration of Brian G. Isaacson, dated October 29, 2010. Dkt. 41, Isaacson Decl., ¶6, and Dkt. 41-5, Ex. 5. The 08/30/2000 date on the bottom of the printout of the website, and the fact that this document was in Morgan Keegan's files pertaining to Derivium, strongly infers that Morgan Keegan knew of Derivium's false marketing materials prior to October 2003, when the Bermans entered into the 90% Loan transaction. *Id.*, and Cmplt., ¶¶21-23.

It is perfectly plausible, based on the well-pled factual allegations in the Complaint, that Morgan Keegan and Gooch, Derivium and Bancroft's broker at Morgan Keegan, knew that the representations that Derivium and Bancroft were making to borrowers regarding the 90% Stock Loan were fraudulent because Morgan Keegan and Gooch were consistently and uniformly receiving orders from Derivium and Bancroft to sell the securities immediately upon transfer into the accounts of Derivium and Bancroft, knowing that securities had been pledged as collateral for 90% Stock Loans by borrowers who, based on the marketing materials, would have assumed that the securities would be held by Derivium and Bancroft, not sold. Cmplt., ¶¶39, 50, 51, 53-89.

Despite the foregoing allegations and evidence of Morgan Keegan's knowledge of Derivium's marketing materials, the Court found that "the Complaint does not allege that Gooch ever read or reviewed this document or took any actions indicating that he understood how the program was marketed to borrowers." Order, p. 20.

Plaintiffs respectfully submit that the Complaint is not deficient. The Complaint alleges Morgan Keegan's knowledge of the Derivium marketing materials. Cmplt. ¶¶30-32. There is a strong inference that Gooch read and printed the Derivium marketing materials available on the Derivium website, based on the allegations in the Complaint and based on the actual website printout that pre-dates the Bermans' 90% Stock Loan transaction, which was produced by Morgan Keegan out of Gooch's files on Derivium at Morgan Keegan. Dkt. 41, Isaacson Decl. dated Oct. 29, 2010, ¶6, and Ex. 5 thereto.

Again, the allegations in the original complaint sufficiently plead facts showing Morgan Keegan and Gooch's actual knowledge of Derivium and Bancroft's fraud and their aid and abettance in furtherance of Derivum's fraud, breach of fiduciary duty and conversion.

However, in order to prevent an injustice and to persuade the Court to reconsider its Order of dismissal and, if the Court still believes the Complaint is deficient, in order to persuade the Court to permit Plaintiffs leave to amend the complaint, Plaintiffs submit additional evidence of Morgan Keegan and Gooch's knowledge of Derivium and Bancroft's fraudulent scheme. Plaintiffs also hereby submit a Proposed Amended Complaint and hereby move for leave to file it as an amended complaint. Isaacson Decl., Ex. 10.

Attached as Exhibit 4 to the Isaacson Declaration, filed concurrently herewith, is a document entitled "First Security Capital Services Overview, Prepared for Mr. Robert Gooch, June 8, 1999" (referred to herein as "Services Overview"). Isaacson Decl., ¶6, Ex. 4. This is yet another document Plaintiffs' counsel obtained from the Derivium Bankruptcy Trustee. *Id.* It can be

5

assumed that Gooch read this document as well, since it was obviously prepared for him and he produced it to the Derivium Bankruptcy Trustee out of the Morgan Keegan file pursuant to subpoena. Isaacson Decl., ¶¶2-6. The Complaint alleges that First Security Capital ("FSC") was the first company through which Charles Cathcart started marketing the 90% Stock Loan in 1997. Cmplt., ¶91. In 2000 Cathcart changed the name of FSC to Derivium and also formed Bancroft, purportedly the entity that would actually make the "loan." Cmplt., ¶95. Gooch set up the account for Derivium at Morgan Keegan in 2001. Cmplt., ¶62.

The Services Overview provides Gooch and Morgan Keegan with an overview of the 90% Stock Loan that Cathcart marketed through FSC and lays out the steps every borrower must take as part of the 90% Stock Loan, which is the same 90% Stock Loan and the same steps every borrower took when Cathcart operated Derivium and Bancroft and ran 90% Stock Loan transactions through Morgan Keegan, using Gooch as broker. Isaacson Decl., ¶6, Ex. 4.

**Step 1**, the borrower submits a Borrower Application. *Id.*, at p. 2.

**Step 2**, the *borrower signs the Master Loan Agreement. Id.*, at p. 2.

**Step 3**, the *borrower instructs the borrower's broker to transfer the securities the borrower is pledging as collateral for the loan. Id.*, at p. 2. In the Bermans' case, Step 3 consisted of the Bermans, as borrowers, transferring their shares to Bancroft's account at Morgan Keegan. Cmplt., 21-23. Gooch and Morgan Keegan knew that the securities Morgan Keegan was receiving into Bancroft's account at Morgan Keegan were securities pledged by borrowers. Cmplt., ¶¶30-33.

**Step 4**, borrower receives a valuation confirmation of the securities transferred into FSC's account. *Id.*, at p. 2. In the case of the Bermans, this was Bancroft's account. Cmplt., ¶¶22-24 and 26. The Services Overview, *which Gooch received*, further states regarding Step 4:

> At this point, FSC will *promptly initiate hedging transactions to protect the value of the collateral you have submitted*. The market value of your positions at the time the hedging instruments are established determines your Hedged Valuation. The Hedged Valuation is the basis for determining your 90% Stock Loan amount, and you will receive an Activity Confirmation via fax from FSC Operations which details the specific hedge and loan values. In most cases, FSC's *hedging activity is completed within one business day of receipt of the collateral*, but in certain cases this part of the process could take longer. In all cases, FSC will provide you with an estimated time to complete this activity.

*Id.*, p. 2.

**Step 5**, borrower receives "loan proceeds via wire within two business days after hedging activity has been completed." *Id.*, p. 2.

The number one Key Benefit of the 90% Stock Loan in the Services Overview, prepared for Gooch and in Gooch's file on Derivium, is that "With the 90% Stock Loan, you get 90% of the current value of your stocks without selling." *Id.*, p. 3.

Another Key Benefit of the Stock Loan in the Services Overview is "With the 90% Stock Loan, you still own your stock, so all appreciation in the value of your portfolio is yours when the loan is repaid at the end of your loan term." *Id.*, p. 3

All that the FSC, Derivium or Bancroft's marketing materials indicate is that the pledged securities will *not* be sold. *Id.* and Dkt. 41, Isaacson Decl., ¶6, and Dkt. 41-5, Ex. 5 (Derivium website). None of these materials even remotely suggest that the "hedging transaction" is actually nothing but a sale of the pledged securities. These are the same marketing materials Morgan Keegan and Gooch had in their file regarding Derivium—and there is no question that Gooch read it, reviewed it and knew it.

The Complaint alleges Morgan Keegan and Gooch knew that Derivium borrowers, including the Bermans, retained an ownership interest in their pledged securities and alleges that

7

Morgan Keegan and Gooch knew that the borrowers' pledged securities were immediately sold upon transfer into Derivium and Bancroft's accounts at Morgan Keegan, contrary to the representations by Derivium and Bancroft and contrary to the expectations of the borrowers, including the Bermans. Cmplt. ¶¶39, 42-89. By Morgan Keegan and Gooch knowing these facts and knowing that they sold the securities immediately upon receipt into Derivium and Bancroft's accounts at Morgan Keegan, Morgan Keegan and Gooch knowingly aided and abetted Derivium and Bancroft's fraud, breach of fiduciary duty and conversion.

Exhibit 4 to the Isaacson Decl. is an e-mail from Gooch to Leigh Vuncannon in Morgan Keegan's Legal Department, advising Vuncannon to refer to Derivium's website for a definition of Derivium's business model. Gooch includes a link to Derivium's website in the same e-mail. This shows that Gooch read the material on Derivium's website that was in his file at Morgan Keegan pertaining to Derivium. Isaacson Decl., Ex. 4; and see, Dkt. 41, Isaacson Decl., ¶6, and Dkt. 41-5, Ex. 5.

Exhibit 6 apparently are notes from a Morgan Keegan Private Client Group Regional Meeting of unknown date, regarding Derivium. These notes reflect knowledge on the part of Morgan Keegan that the securities held by Derivium clients are in connection with ESOP plans. Isaacson Dec., Ex. 6.

Exhibit 8 to the Isaacson Decl. are a series of e-mails dated in the September to November 2001 time frame in which Gooch describes his understanding of the Derivium transactions. On page 2 of Exhibit 8, in an e-mail to Tracy Sargraves, Gooch equates the sale of securities in Bancroft's account with hedging. This clearly shows that Morgan Keegan and Gooch connected hedging with selling, whereas they knew that the borrowers, clients of Derivium and Bancroft, including the Bermans, did not.

### 2. Plaintiffs Can Plead Knowledge through the Conscious Avoidance Standard

As in the context of pleading a primary violation, pleading knowledge for purposes of an aiding and abetting claim requires allegations of facts that give rise to a "strong inference" of actual knowledge. *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir. 1983). Under New York law, conscious avoidance is sufficient to establish the knowledge prong of an aiding and abetting claim. Allegations of constructive knowledge or recklessness, by comparison, are insufficient. *Fraternity Fund Ltd. V. Beacon Hill Asset Management, LLC*, 479 F. Supp. 2d 349, 368 (quoting BLACKS LAW DICTIONARY (8th ed. 2004). In *Fraternity Fund Ltd.* at 368, Judge Kaplan distinguished the constructive knowledge standard from the conscious avoidance standard in the context of an aiding and abetting fraud claim as follows:

> Constructive knowledge is "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." Conscious avoidance, on the other hand, occurs when "it can almost be said that the defendant actually knew" because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge. Conscious avoidance therefore involves a culpable state of mind whereas constructive knowledge imputes a state of mind on a theory of negligence. Reflecting this analysis, the Second Circuit has held in the criminal context that conscious avoidance may satisfy the knowledge prong of an aiding and abetting charge. Accordingly, the Court sees no reason to spare a putative aider and abettor who consciously avoids confirming facts that, if known, would demonstrate the fraudulent nature of the endeavor he or she substantially furthers.

*Id.*

### 3. The Court Erred In Denying Plaintiffs Leave to Amend the Complaint

It was error for the Court to dismiss Plaintiffs' claims in their entirety and to deny Plaintiffs' request for leave to amend. The Court's decision to deny leave to amend was based on the following grounds

> Morgan Keegan outlined the perceived deficiencies in the Complaint. Nearly two months after receipt of the motion, on October 8, 2010, this

9

> Court afforded plaintiffs an opportunity to amend their complaint to address Morgan Keegan's arguments. Plaintiffs declined.

Order, p. 28.

On October 8, 2010, when the Court inquired of Plaintiffs' counsel at the pretrial conference if Plaintiffs intended to stand on the existing pleading rather than amend, Plaintiffs had not yet had an opportunity to prepare and file their Memorandum of Law in Opposition to the motion to dismiss or the Declaration of Brian Isaacson with attached Exhibits, which were timely on October 29, 2010. Dkt. 41 and 42. As of October 8, 2010, based only at that time on Morgan Keegan's motion to dismiss, Plaintiffs did not believe that the Complaint was deficient.

Furthermore, when the Court asked Plaintiffs' counsel that question at the October 8th pretrial conference, the Court did not inform Plaintiffs or Plaintiffs' counsel or suggest in any way that Plaintiffs would not be granted leave to amend the Complaint, no matter what, if they opposed Morgan Keegan's motion to dismiss.

It was error for the Court to deny Plaintiffs' motion to amend. Plaintiffs have shown that amendment to the complaint would not be futile. The Proposed Amended Complaint attached as Exhibit 10 to the Isaacson Declaration, further develops facts which demonstrate both actual knowledge on the part of Morgan Keegan and conscious avoidance on the part of Morgan Keegan in the context of an aiding and abetting claim.

The proposed amended complaint also adds a cause of action for breach of fiduciary duty against Morgan Keegan.

## IV. CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request the Court reconsider and reverse its Order dismissing Plaintiffs' claims against Morgan Keegan and Gooch and its denial of Plaintiffs' request for leave to amend, and allow Plaintiffs to amend their pleadings.

Dated: Seattle, Washington

April 15, 2011

                                              ISAACSON & WILSON, P.S.

*/s/ Brian G. Isaacson*
Brian G. Isaacson
1515 BROADWAY 11TH FLOOR
NEW YORK, NEW YORK 10036
TEL:   646-308-1600
FAX:   888-964-9449
e-mail: briani@isaacsonwilson.com
*Attorney for Plaintiffs Edward Berman and Annie Berman*
New York Registration No. 4677274