UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

ANNIE BERMAN & EDWARD BERMAN,

        Plaintiffs,

    v.

MORGAN KEEGAN & CO., INC.,

        Defendant.
------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  6-3-11
```

MEMORANDUM
AND
ORDER

10 Civ. 5866 (PKC)

P. KEVIN CASTEL, United States District Judge:

        On March 14, 2011, this Court issued a Memorandum and Order granting defendant's motion to dismiss and denying plaintiffs leave to amend. Berman v. Morgan Keegan & Co., Inc., 2011 WL 1002683 (S.D.N.Y. Mar. 14, 2011). Plaintiffs now move, pursuant to Rules 15(a) and 59(e), Fed. R. Civ. P., to alter or amend the judgment and for leave to file an amended complaint. (Docket # 55.) For the reasons stated below, this motion is denied.

BACKGROUND

        Familiarity with the facts set forth in the March 14, 2011 Memorandum and Order is assumed. In short, the Complaint alleges that Morgan Keegan & Co., Inc. ("Morgan Keegan") aided and abetted Derivium Capital LLC ("Derivium") and Bancroft Ventures Ltd. ("Bancroft") in their conversion of plaintiffs' floating rate notes ("FRN"), their breaches of fiduciary duties and their fraud. Plaintiffs' claims were dismissed "[b]ecause plaintiffs failed to plead facts with the requisite particularity to support their claim that Morgan Keegan had actual knowledge of the underlying fraud . . . ." Berman,

2011 WL 1002683, at *13.  The aiding and abetting conversion claim premised upon

fraud and the aiding and abetting breach of fiduciary duty claim sounding in fraud were

also dismissed for this reason.  Id. at *13-14.

DISCUSSION

    1.  Legal Standard for Motions to Reconsider under Rule 59(e) and Post-Judgments
        Leave to Amend

        The standards for relief under Local Civil Rule 6.3 and Rule 59(e), Fed. R.

Civ. P. are "identical."  Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368

(S.D.N.Y. 1999).  "Local Civil Rule 6.3 elaborates on Fed. R. Civ. P. 59(e) and provides

a vehicle for a party to call the court's attention to facts or controlling decisions it

believes the court overlooked in reaching its prior decision."  Truong v. Charles Schwab

& Co., Inc., 2009 WL 464452, at *1 (S.D.N.Y. Feb. 24, 2009) (quotation marks and

footnote omitted).  The standards for granting a motion to reconsider under Rule 59(e)

are strict: "[r]econsideration of a previous order by the court is an extraordinary remedy

to be employed sparingly in the interests of finality and conservation of scarce judicial

resources."  Cordero v. Astrue, 574 F. Supp. 2d 373, 380 (S.D.N.Y. 2008) (citation and

quotation marks omitted).  "Generally, motions for reconsideration are not granted unless

the moving party can point to controlling decisions or data that the court overlooked–

matters, in other words, that might reasonably be expected to alter the conclusion reached

by the court."  In re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003) (citation and

quotation marks omitted).  While a court may grant the motion "to correct a clear error of

law or prevent manifest injustice," Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d

Cir. 2004), "a motion to reconsider should not be granted where the moving party seeks

solely to relitigate an issue already decided."  Shrader v. CSX Transp., Inc., 70 F.3d 255,

257 (2d Cir. 1995).

> "A party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). "Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint." Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf, 930 F.2d 240, 245 (2d Cir. 1991). The Second Circuit has also noted "in dicta that 'in view of the provision in rule 15(a) that leave to amend shall be freely given when justice so requires, it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment.' " Ruotolo, 514 F.3d at 191 (quoting Nat'l Petrochemical Co. of Iran, 930 F.2d at 245) (citation and internal alterations omitted).

2. Application

> The basis for plaintiffs' motion is three-fold. Plaintiffs argue that (1) the Court failed to afford sufficient weight to their allegation relating to a website printout Robert Gooch allegedly placed in the Derivium file maintained at Morgan Keegan, (2) it erred in denying plaintiffs leave to amend, and (3) in order to prevent an injustice, the Court should now grant plaintiffs leave to amend the Complaint and in doing so, should consider the additional facts and exhibits set forth in the present motion papers which, according to plaintiffs, show that Gooch and Morgan Keegan had knowledge or consciously avoided learning of the underlying fraud committed by Derivium and Bancroft. (Pl. Mem. 2, 5.)

A.    Plaintiffs' Motion to Alter or Amend the Judgment Is Denied; The Court
      Did Not Overlook Any Facts Set Forth in the Complaint

Plaintiffs' first argument is an attempt to rehash the issues already briefed
and decided and fails to set forth any overlooked controlling precedent or facts.  The
Court concluded in its March 14, 2011 Memorandum and Order that plaintiffs failed to
allege facts to support a strong inference that defendant had knowledge of the underlying
fraud.  Specifically, plaintiffs failed to set forth any "facts indicating that Morgan Keegan
knew the sales [of the securities] were not authorized."  Berman, 2011 WL 1002683, at
*11.  Plaintiffs argue that had the Court afforded sufficient weight to plaintiffs' allegation
that Robert Gooch, a senior vice president at Morgan Keegan and the broker-dealer
assigned to the Derivium account, placed an August 30, 2000 printout from Derivium's
website into the Bancroft account file maintained at Morgan Keegan, it would not have
come to this conclusion.  (Pl. Mem. 5.)  Plaintiffs point to the Court's statement that "the
Complaint does not allege that Gooch ever read or reviewed this document or took any
actions indicating that he understood how the program was marketed to borrowers."
Berman, 2011 WL 1002683, at *10.  To support their position that defendant knew about
the underlying fraud, plaintiffs argue that the presence of this document in Gooch's file
creates a strong inference that he read the material and printed this material off the
Derivium website.  (Pl. Mem. 5.)

The presence of the website printout in the file, indeed, creates a
permissible inference that Gooch read the content of the printout.  However, the Court
did not overlook the presence of the printout in the Bancroft file.  The Court specifically
addressed it, among other facts alleged, before concluding that "[c]ollectively, the facts
alleged do not give rise to a strong inference that Morgan Keegan had actual knowledge

4

that Derivium or Bancroft was committing fraud." Berman, 2011 WL 1002683, at *12.

This printout, which demonstrates how Derivium marketed the 90% Loan Program to

clients, does not create a strong inference that Gooch or defendant knew or consciously

avoided learning of the underlying fraud.   The Court considered the language of the

Master Loan Financing and Security Agreement ("MLFSA"), an agreement each plaintiff

entered into with Bancroft, which authorized the "Lender(s) and its/their agents and/or

assigns the right" to sell the securities. Berman, 2011 WL 1002683, at *3, 12.   This

Court did not fail to afford the printout sufficient weight.   Standing alone or considered

with all other allegations, it does not create a strong inference of fraud.   See Munafo v.

Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004) (explaining that a motion to

reconsider should not be granted where the moving party seeks solely to revisit an issue

already decided).

B.     The Court Properly Denied Leave to Amend; Leave to Amend Post-
       Judgment Is Also Denied

Leave to amend was denied in the March 14, 2011 Memorandum and

Order because plaintiffs had already been afforded an opportunity to amend the

Complaint after they were in possession of defendant's motion to dismiss papers

outlining defendant's perceived deficiencies and because plaintiffs failed to set forth in

their motion papers any additional facts indicating how the pleading deficiencies would

be cured by amending the Complaint. Berman, 2011 WL 1002683, at *15. Cf. Rosner v.

Star Gas Partners, L.P., 344 Fed. Appx. 642, 645 (2d Cir. 2009) (affirming district court's

denial of leave to amend where "[t]he district court gave plaintiffs-appellants the

opportunity to amend the [c]omplaint after a pre-motion telephone conference where the

defendants described their arguments in favor of dismissal . . . and [plaintiffs-

5

appellants] . . . did not submit proposed amendments or otherwise indicate how they would correct any deficiencies in the Complaint" "[a]lthough plaintiffs-appellants informally requested leave to amend in their motion papers").  Plaintiffs explain that "the Court did not inform [p]laintiffs or [p]laintiffs' counsel or suggest in any way that [p]laintiffs would not be granted leave to amend the Complaint, no matter what, if they opposed Morgan Keegan's motion to dismiss."  (Pl. Mem. 10.)  In the scheduling order sign on October 7, 2010, the Court set forth the response and reply deadlines for the pending motion to dismiss and stated "[h]aving received defendants' motion papers, plaintiff elects to stand on the existing pleadings rather than amend."  (Docket # 38.)  Plaintiffs are correct that the Court did not state that leave to amend would be denied "no matter what."  But seeking to amend to add facts that could have been alleged or called to the Court's attention before final judgment was entered without setting forth good reason for such a delay does not persuade the Court to alter or amend the judgment or to permit plaintiffs to amend the Complaint post-judgment.  There is no indication that plaintiffs' requests stem from newly uncovered information that was previously unavailable when the Complaint was filed or any time before final judgment was entered.

Plaintiffs also explain that when, at the October 7, 2010 pretrial conference, the Court invited them to amend the Complaint, they "had not yet had an opportunity to prepare and file their" opposition papers, although they concede they had the motion papers.  (Pl. Mem. 10.)  Even after filing, their opposition papers only included a fleeting and perfunctory statement in their opposition brief that "should the Court decide that the Complaint is insufficient, [p]laintiffs respectfully request leave to

amend." (Pl. Mem. in Opp. to Def. Motion to Dismiss 3.) Plaintiffs did not set forth any

of the facts or allegations they now offer.

Now, after entry of final judgment, plaintiffs submit an affidavit with

multiple exhibits as "additional evidence of Morgan Keegan['s] . . . knowledge of

Derivium and Bancroft's fraudulent scheme" that includes facts not previously put before

the Court.[1]  (Pl. Mem. 5.)  Plaintiffs have also attached a Proposed Amended Complaint,

which also includes a new cause of action alleging breach of fiduciary duty.  (Isaacson

Aff. Apr. 2011 Ex. 10.)  Plaintiffs assert that through these documents, plaintiffs can

plead knowledge of the underlying fraud by satisfying the conscious avoidance standard.

See Fraternity Fund Ltd. V. Beacon Hill Asset Management, LLC., 479 F. Supp. 2d 349,

368 (S.D.N.Y. Mar. 27, 2007) (Kaplan, J.) (quoting BLACK'S LAW DICTIONARY

(8th ed. 2004)) ("Conscious avoidance . . . occurs when 'it can almost be said that the

defendant actually knew' because he or she suspected a fact and realized its probability,

but refrained from confirming it in order later to be able to deny knowledge.")

Plaintiffs did not seek leave to amend the Complaint to add a new cause of

action for breach of fiduciary duty against Morgan Keegan until April 2011, more than

eight months after this action was removed to federal court.  (Docket # 1, 55.)  Plaintiffs

noted an intention to seek leave to amend to allege a breach of fiduciary duty in their

motion papers submitted in opposition to defendant's motion to dismiss, filed

approximately five months before final judgment was entered, but never acted upon this

intention until after final judgment was entered.  (Docket # 42.)

---

[1] Local Civil Rule 6.3 states that "[n]o affidavits shall be filed by any party unless directed by the court."
Although plaintiffs frame their motion as solely one under Rule 59(e), Fed. R. Civ. P., their motion is
essentially a motion for reconsideration under Local Civil Rule 6.3.  Although the Court has not directed
plaintiffs to file an affidavit, I have nonetheless reviewed and considered these documents.

Plaintiffs offer no valid explanation for their undue delay in seeking leave to amend to add a new cause of action until after final judgment.  See Foman v. Davis, 371 U.S. 178, 182 (1962) (motions for leave to amend may be denied where the court finds "undue delay, bad faith or dilatory motive . . . ."); State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990) ("When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly."); see also Cox v. National R.R. Passenger Corp., 2009 WL 2634792, at *3 (S.D.N.Y. Aug. 25, 2009) (stating that "a plaintiff may not rescue his complaint by inserting new or revised allegations in a motion for reconsideration").   The motion to amend is denied.

C.      Plaintiffs' Motion to Amend Is Also Denied As Futile

Moreover, the Proposed Amended Complaint would not likely survive a motion to dismiss.[2]  The facts set forth in the Proposed Amended Complaint and the exhibits submitted in support of plaintiffs' motion to amend do not support a strong inference that Morgan Keegan or its employees knew the sales were not authorized or consciously avoided learning any such knowledge; nor does it appear based on the non-conclusory facts alleged, primarily a direct communication between the plaintiffs and defendant in arranging for transfer of their collateral, that a fiduciary relationship existed between plaintiffs and Morgan Keegan.  See EBCI I, Inc. v. Goldman Sachs & Co., 832 N.E.2d 26, 31 (N.Y. 2005) (explaining that under New York law, a fiduciary relationship "exists between two persons when one of them is under a duty to act for or to give advice

---

[2] Notably, and most unhelpfully, plaintiffs chose not to furnish a marked to show changes copy of the Proposed Amended Complaint to assist the Court in its analysis.

8

for the benefit of another upon matters within the scope of the relation") (internal quotation marks and citation omitted.)

In attempting to cure the deficiencies, plaintiffs have added conclusory allegations—legal labels—which do not amount to facts plausibly showing that the pleaders are entitled to relief. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). At most, the allegations amount to a claim that defendants should have used greater diligence in acquiring knowledge that would have disclosed the underlying fraud. Such allegations are insufficient to satisfy the knowledge requirement for aiding and abetting fraud. See Fraternity Fund Ltd., 479 F. Supp. 2d at 368.

The plaintiffs have consistently alleged that Morgan Keegan knew the content of the generic form of the MLFSA. (Proposed Am. Compl. ¶ 39; Compl. ¶ 131.) The MLFSA would have disclosed to Morgan Keegan that "Borrower grants to the Lender(s) and its/their agents . . . the right and power, without the requirement of notice to or consent of Borrower, to . . . sell outright and/or otherwise dispose of some or all of the Collateral during the Loan Term (Loan Term shall be as separately defined for each Loan in the Loan Schedule(s))." (Isaacson Aff. Oct. 2010 Exs. 1 ¶ 5, 3 ¶ 5.) A review of the text of the MLFSA would have also disclosed that Bancroft was engaged to provide services "as lender." (Isaacson Aff. Oct. 2010 Exs. 1 ¶ 1(a), 3 ¶ 1(a).) Thus, a reader of the MLFSA would not have thought anything was amiss if the lender—Bancroft—sought to sell the collateral—the FRN. Plaintiffs assert that a review of the Loan Schedules would have disclosed that the sale did not take place during the "Loan Term." (Pl. Mem. in Opp. to Def. Motion to Dismiss 9.) But the Loan Schedules—Schedules A-1 through A-4—if they had been seen and read by Morgan Keegan would have disclosed that the

9

Loan Terms were "28 [or 29] years, starting from the date on which final Loan proceeds are delivered on the Loan transaction." (Isaacson Aff. Oct. 2010 Exs. 2 ¶ 8, 4 ¶ 8.) Morgan Keegan would have no immediate way of knowing whether the Loan proceeds had been delivered and no duty to investigate whether they had been delivered. A review of these documents by Morgan Keegan would have led them to believe that Bancroft's actions were legal, not fraudulent, and that the Bermans had authorized Bancroft to sell the collateral—the FRN.

The Proposed Amended Complaint also alleges that Morgan Keegan's compliance department inquired about the "unusual transactions" in "Derivium's and Bancroft's account at Morgan Keegan." (Proposed Am. Compl. ¶ 47.) In an effort to show that Gooch "convince[d] [Morgan Keegan's] compliance department not to investigate whether the sales were authorized," plaintiffs describe email correspondences between a compliance officer and Gooch. (Proposed Am. Compl. ¶ 47.) The compliance officer email states: "what can you tell me about these recent trades in Bancroft Ventures . . . Received in . . . immediately sold . . . FF out . . . ." (Proposed Am. Compl. ¶ 47) (ellipses as email is quoted in the Proposed Amended Complaint and as plaintiffs allege are part of the original email.) Gooch allegedly responded the same day: "Much like a DVP account, except we have the assets in hand before anything is bought or sold." (Proposed Am. Compl. ¶ 47.) Plaintiffs, however, do not explain how this email shows that Gooch or Morgan Keegan knew the sales were not authorized or that Bancroft had deceived the Bermans and others.

Plaintiffs also refer to another email dated September 28, 2001, in which Gooch allegedly wrote, "In its simplest terms, the [sic] are opening this acct to rec

10

securities from the derivium acct and then we will hedge (sell) from this new acct."
(Proposed Am. Compl. ¶ 29) (as quoted by plaintiffs to reflect the exact language of the
email.)  They also reference the Financial Services Overview "read by Gooch," which
"provides that after the client receives a Valuation confirmation, [Dr.] Cathcart will
promptly initiate hedging transactions to protect the value of the collateral the client has
submitted." (Proposed Am. Compl. ¶ 28.)  According to plaintiffs, "[t]he reasonable
inference from this e-mail is that Gooch knew that there was no hedge in place, but the
shares were to be immediately sold" and that "Gooch knew . . . the terms 'hedge' and
'sell' [were being used] interchangeably." (Proposed Am. Compl. ¶ 29.)  Assuming,
arguendo, that defendant knew that Derivium promoted the 90% Loan Program as one in
which a hedging strategy was to be implemented in order to protect the value of the
collateral, and that the hedging transactions involved selling the collateral, this does not
adequately plead that Morgan Keegan knew of the underlying fraud when, at least as
reasonably viewed from Morgan Keegan's eyes, plaintiffs had authorized Bancroft to sell
the collateral under the terms of the MLFSA.  Viewing the allegations in the context of
the entirety of the Proposed Amended Complaint and in a light most favorable to
plaintiffs, plaintiffs do not plausibly allege facts giving rise to a strong inference that
Morgan Keegan knew or consciously avoided learning that Bancroft or Derivium was
committing fraud.

CONCLUSION

For the reasons set forth above, plaintiffs' motion to alter or amend the
judgment and for leave to file an amended complaint (Docket # 55) is DENIED.


SO ORDERED.

11

P. Kevin Castel
United States District Judge

Dated: New York, New York
         June 3, 2011