N.Y.S.D. Case #
10-cv-5866(PKC)

11-2725-cv
Berman v. Morgan Keegan & Co. Inc.

**MANDATE**

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**AMENDED SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO
A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS
GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S
LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH
THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY
COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the
Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 25th day
of January, two thousand twelve.

Present:
　　　　ROBERT A. KATZMANN,
　　　　GERARD E. LYNCH,
　　　　　　　　*Circuit Judges*,
　　　　LEWIS A. KAPLAN,
　　　　　　　　*District Judge.*\*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 10, 2012

---

ANNIE BERMAN and EDWARD BERMAN,

　　　　*Plaintiffs-Appellants*,

　　　　　　v.　　　　　　　　　　　　　　　No. 11-2725-cv

MORGAN KEEGAN & CO., INC.,

　　　　*Defendant-Appellee*,

JANNEY MONTGOMERY SCOTT,

　　　　*Defendant.*

---

\* The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New
York, sitting by designation.

MANDATE ISSUED ON 02/10/2012

For Plaintiffs-Appellants:           BRIAN G. ISAACSON, Isaacson & Wilson, P.S., Seattle, W.A.

For Defendant-Appellee:           SCOTT E. ZWEIGEL, Parker, Hudson, Rainer & Dobbs, LLP, Atlanta, G.A. (G. Wayne Hillis Jr., Parker, Hudson, Rainer & Dobbs, LLP, Atlanta, G.A., Ronald S. Herzog, Robinson, Brog, Leinwand, Greene, Genovese & Gluck, P.C., New York, N.Y., *on the brief*).

Appeal from the United States District Court for the Southern District of New York (Castel, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Annie Berman and Edward Berman appeal a March 18, 2011 judgment entered by the U.S. District Court for the Southern District Court of New York (Castel, *J.*), following a Memorandum and Order dated March 14, 2010 dismissing their Complaint for failure to state a claim, as well as a post-judgment Memorandum and Order dated June 3, 2011 denying plaintiffs' motion to alter or amend the judgment.

Plaintiffs allege that they were victims of a wide-ranging fraudulent scheme orchestrated by Charles Cathcart, a principal at Derivium Capital LLC ("Derivium").[1] Under the guise of a tax deferral transaction, Derivium took plaintiffs' securities and purported to "loan" back to plaintiffs an amount equivalent to 90% of the value of those securities. Moreover, over the course of the loan term, Derivium represented to plaintiffs that, through Derivium's management, plaintiffs' securities portfolio continued to receive interest payments. In theory,

---

[1] The Complaint also alleges that Cathcart was a principal of Derivium's close affiliate, Bancroft Ventures Limited. However, because the Complaint does not systematically differentiate between the two entities, this summary order refers to them collectively as "Derivium."

2

this allowed plaintiffs to monetize 90% of their securities' value while deferring payment of capital gains taxes. In reality, however, plaintiffs allege that Derivium sold their securities at the outset, conveyed 90% of the proceeds from that sale back to plaintiffs in the form of a sham "loan," and funneled the remaining 10% of the money into Cathcart's personal business ventures. As a result, plaintiffs now owe the Internal Revenue Service over $1 million in back taxes and penalties.

Cathcart's scheme has been the subject of extensive litigation. *See, e.g.*, *Nagy v. United States*, Nos. 2:08CV2555(DCN), 2:08CV2755(DCN), 2009 WL 5194996, *1-2 (D.S.C. 2009) (finding Derivium's officers and directors subject to penalties under 26 U.S.C. § 6700, which prohibits individuals from "securing . . . any . . . tax benefit" by fraud); *General Holdings, Inc. v. Cathcart*, 06 Civ. 01121 (D.S.C. July 29, 2009) (jury award of damages of $150 million against Derivium officers and directors on claims of fraud, RICO, fraudulent conveyance, conversion, and federal securities violations). In the instant action, plaintiffs seek to recover their loss from Morgan Keegan & Co., Inc. ("Morgan Keegan"), one of Derivium's broker-dealers, for allegedly aiding and abetting Derivium's fraud, conversion, and breach of fiduciary duty. The district court dismissed the Complaint on the ground that it failed to allege facts giving rise to a strong inference that Morgan Keegan had actual knowledge of Derivium's fraudulent scheme, as is required under Rule 9 of the Federal Rules of Civil Procedure. We presume the parties' familiarity with the remaining facts and procedural history of this case.

We review *de novo* a district court's dismissal of a complaint for failure to state a claim. *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 103-04 (2d Cir. 2009). In order to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Moreover, in diversity cases alleging fraud, Rule 9 of the Federal Rules of Civil Procedure requires a complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006) (Rule 9(b) pleading requirements apply to claims of aiding and abetting fraud). To satisfy this heightened pleading standard, a complaint must, among other things, "allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group. Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). This requirement of pleading a "strong inference" that the aider and abettor had "actual knowledge" of the primary offender's wrongdoing also applies to claims for breach of fiduciary duty and conversion that, like those asserted here, sound in fraud. *See S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir. 1987). "A plaintiff can establish a strong inference of fraudulent intent in two ways: either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) (internal quotation marks omitted).

We turn first to the plaintiffs' contention that the district court erred in holding that the Complaint failed to allege sufficient facts to support a strong inference that Morgan Keegan had actual knowledge of Derivium's fraudulent scheme. In this regard, plaintiffs make four arguments on appeal: (1) that the presence of a document in Derivium's Morgan Keegan account

files describing how Derivium marketed the 90% Loan Program establishes that Morgan Keegan knew that Derivium customers' collateral was supposed to be "hedged" and not sold; (2) that Morgan Keegan was obligated by "Know Your Customer Rules" to closely monitor Derivium's operations, and so one can infer that it did so; (3) that Morgan Keegan assisted Derivium's sale of plaintiffs' collateral before Derivium was authorized to do so under the MLFSAs, and therefore must have known of Derivium's fraud; and (4) that one can infer from Morgan Keegan's entering into an release agreement with Derivium that Morgan Keegan was aware of Derivium's fraud.  We find each of these arguments unconvincing.

First, Morgan Keegan's understanding as to how Derivium marketed and sold the 90% Loan Program to its customers has no direct bearing on whether Morgan Keegan knew that scheme was fraudulent.  Moreover, the parties' loan agreements expressly granted Derivium, as the "Lender,"

> . . . the right and power, without the requirement of notice or consent of [the plaintiffs], to assign, transfer . . . lend, encumber, short sell, sell, sell outright and/or otherwise dispose of some or all of the Collateral during the Loan Term . . .

*Annie Berman et al. v. Morgan Keegan & Co., Inc.*, No. 10CV5866 (PKC), 2011 WL 1002683, at *11 (S.D.N.Y. March 14, 2011).  Accordingly, the mere fact that Derivium sold plaintiffs' securities would not have put Morgan Keegan on notice of Derivium's fraud.

Second, Morgan Keegan's "Know Your Customer" obligations are, standing alone, far from sufficient to support a strong inference that it had actual knowledge of Derivium's fraud.  As an initial matter, plaintiffs do not identify any particular monitoring obligation on the part of Morgan Keegan, the proper exercise of which would have alerted it to Derivium's fraud.  Moreover, even if such an obligation were to be identified, the strongest inference one could

5

draw therefrom is that Morgan Keegan should have known of Derivium's wrongdoing, not that it had actual knowledge thereof. Otherwise, brokerage firms would be liable for aiding and abetting fraud every time a fraudster used brokerage accounts in service of its fraud in a detectable manner. That is not the law.

Third, the mere fact that Derivium sold its customers' securities outside of the "loan term" is insufficient to support a strong inference that Morgan Keegan was actually aware of Derivium's fraud. Critically, the Complaint alleges no facts by which we could infer that Morgan Keegan knew when Derivium was authorized to sell plaintiffs' collateral under the loan agreements. Accordingly, there is nothing in the Complaint from which we can infer that the timing of Derivium's sales of plaintiffs' securities should have been cause for concern.

Finally, the fact that Morgan Keegan entered into an agreement with Derivium by which Derivium relieved Morgan Keegan of any "best execution" brokerage obligations does not support an inference that Morgan Keegan knew Derivium was engaging in fraud. On its face, contrary to plaintiffs' assertions, the Release is not a general indemnity agreement, but rather a waiver of Derivium's right to bring suit against Morgan Keegan in the event that Morgan Keegan was unable to secure market-prevailing prices for Derivium's securities purchases. And in any event, as a general matter, entering into a release agreement with a fraudster is not at all indicative that one knew of the fraud, as one could not reasonably expect such an agreement to provide one shelter from that fraud's consequences.

Accordingly, we conclude that the district court correctly dismissed plaintiffs' claims for failing to adequately allege that Morgan Keegan had actual knowledge of Derivium's fraud.

In addition, even if we were to disagree with the district court's holding as to the sufficiency of the Complaint's allegations regarding Morgan Keegan's knowledge of Derivium's fraud, we would still affirm the Complaint's dismissal for failure to allege that Morgan Keegan provided "substantial assistance" to Derivium's fraudulent scheme. *Cf. Algarin v. Town of Wallkill*, 421 F.3d 137, 139 (2d Cir. 2005) (It is proper to uphold a dismissal for failure to state a claim based "on any ground supported by the record."). "Substantial assistance exists where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *UniCredito Italiano SpA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003) (internal quotation marks omitted). It is well-established that "[t]he mere fact that participants in a fraudulent scheme use accounts at [a financial institution] to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance." *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 330 (S.D.N.Y. 2010) (internal quotation marks omitted); *see also, e.g.*, *DePinto* v. *Ashley Scott, Inc.*, 222 A.D.2d 288, 290 (1st Dep't 1995); *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 25 (S.D.N.Y. 2009), *aff'd.* 382 F. App'x 107 (2d Cir. June 29, 2010) (summary order).

Here, the Complaint does not allege that Morgan Keegan did anything in support of Derivium's fraud other than execute securities transactions on Derivium's behalf and at Derivium's direction. Under the law of this Circuit, this is insufficient to constitute "substantial assistance." Accordingly, we conclude that, even assuming that the Complaint meets the heightened pleading requirements of Rule 9(b) with regard to Morgan Keegan's scienter, the Complaint must be dismissed for failure to state a claim.

Finally, we review a district court's denial of a motion to alter or amend the judgment "for abuse of discretion and will reverse only if the court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000). Here, the district court denied plaintiffs' request to amend the judgment on the ground that plaintiffs had engaged in "undue delay" in seeking to amend the Complaint only after it was dismissed. *See Berman v. Morgan Keegan & Co., Inc.*, No. 10CV5866(PKC), 2011 WL 2419886, *4 (S.D.N.Y. June 3, 2011). The district court emphasized, moreover, that, after Morgan Keegan filed moving papers in support of their motion to dismiss, the court expressly invited plaintiffs to amend the Complaint, but plaintiffs declined the court's invitation. In such circumstances, a district court does not abuse its discretion to deny a plaintiffs' motion to alter or amend a judgment. *See Rosner v. Star Gas Partners, L.P.*, 344 F. App'x 642, 645 (2d Cir. 2009) (summary order) (affirming district court's denial of leave to amend after plaintiff declined, in a pre-motion telephone conference, the district court's invitation to amend the complaint).

We have considered all of plaintiffs' other arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

8